IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SHANE PHILLIP NICKERSON, | CV 22-95-H-BMM-KLD |
| Plaintiff, | |
| vs. | ORDER |
| BRIAN GOOTKIN, and JIM SALMONSEN, | |
| Defendants. | |

Plaintiff Shane Nickerson filed a Fourth Amended Complaint ("FAC") on August 3, 2023. (Doc. 53.) Defendants Brian Gootkin and Jim Salmonsen have moved to dismiss. (Doc. 63.) The Court will grant the motion, in part, and deny the motion, in part.

**I. MOTION TO DISMISS**

Nickerson's FAC elaborates on the same claims that he raised in his original Complaint. Nickerson continues to assert First and Fourteenth Amendment claims related to his ability to communicate with pen pals and access various resources online. Defendants assert several reasons why Nickerson fails to state a claim. (Doc. 64.)

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

The Court must determine whether the complaint states a "plausible" claim for relief on a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry involves "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. R. Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

### A. First Amendment Claims

The main thrust of Nickerson's FAC are his First Amendment claims. Nickerson has alleged a variety of violations of his constitutional rights. Defendants break down Nickerson's FAC into several separate First Amendment allegations.

1. Constitutional Right to a Pen Pal

Defendants have characterized Nickerson's original claim as a "constitutional right to internet access," to set up a straw man that is easy for them to refute. (Doc. 64 at 4.) Nickerson's allegations in his FAC emphasize that inmates use third parties outside the prison to access and communicate through the prisoner's social media sites. (Doc. 53 at 7–9.) Nickerson argues that he is disadvantaged because he does not have people outside prison to help him access these resources. Nickerson asserts that access to pen pals would provide him with the social support that these other inmates obtain by accessing social media. Nickerson expands his claims to discuss, generally, the benefits of social media for mental health. (*Id.* at 10–11.)

An ambiguity in Nickerson's FAC emerges. Nickerson seeks access to internet resources, specifically he names a few pen pal websites. Nickerson's inmate grievance, attached to his FAC, shows that his request was to access mail order pen pals. The Montana State Prison policy at issue denies access to "mail order pen pals." (Doc 53-1 at 2–3.) Nickerson's request for relief does not clarify whether he seeks a pen pal through any mechanism, or only an online pen pal, because it asks for a modification of the pen pal policy but refers again to the internet sites. (Doc. 53 at 25.) To the extent he seeks internet access, Nickerson does not possess a constitutional right to the internet. MSP's policy bans "mail ordered pen pals."

Nickerson otherwise plausibly asserts a First Amendment claim. (Doc. 53-1 at 2.) Defendants' motion to dismiss as to this claim will be denied.

2. Access to the Courts

"[P]risoners retain the constitutional right to petition the government for the redress of grievances . . ." *See Turner v. Safley,* 482 U.S. 78, 84 (1987). Prisoners have the "right [ ] to litigate without active interference," *Silva v. Di Vittorio,* 658 F.3d 1090, 1102 (9th Cir. 2011) (*overruled on other grounds as stated by Richey v. Dahne,* 807 F.3d 1202, 1209 n. 6 (9th Cir. 2015)). This right to litigate exists so that prisoners have a "viable mechanism to remedy prison injustices." *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir. 2005). Nickerson advances several reasons why the pen pal policy disrupts his access to the courts. Nickerson focuses on his inability to post ads to obtain the help of an attorney. (Doc. 53 at 12–14.) Defendants point out that the pen pal policy does not prevent Nickerson from obtaining counsel in any other fashion. (Doc. 64 at 7.) Nickerson does not have a constitutional right to counsel to pursue his civil claims, and as such, any difficulty getting counsel does not state a federal claim against these defendants.

Further, an access to the courts claim requires greater particularity than Nickerson provides here. A plaintiff must describe the allegedly obstructed action in the complaint:

> It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much

> as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim […] looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The underlying cause of action must be addressed by allegations in the complaint sufficient to give fair notice to a defendant, and to determine what potential remedy a court might be able to fashion. *Christopher,* 536 U.S. at 416 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513–515 (2002)). Nickerson refers to various litigation in the past that could have gone better for him, but he has not plausibly alleged that the pen pal policy unconstitutionally has prevented him from filing valid claims.

Nickerson also must establish that he has suffered an actual injury to state a cause of action for access to the courts. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996) (citation and internal quotation marks omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353 & n.4).

Nickerson alleges no facts regarding any way in which the pen pal policy has thwarted his ability to file suit. Nickerson likely could not plausibly allege that a change in policy would result in him successfully acquiring counsel, at least over the resources and opportunities he has now. Nickerson fails to state a claim for access to the courts.

### 3. Freedom of Religion

Nickerson refers in his FAC to a denial of "the right to seek spiritual guidance." (Doc. 53 at 11.) Nickerson fails to state a claim for infringement on his freedom of religion. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). Nickerson has not credibly alleged that the inability to place ads in a pen pal site substantially burdens his ability to practice his religion. Nickerson fails to state a claim for relief, and Defendants' motion is well-taken on this point.

### 4. Freedom of Association

Nickerson asserts that the restriction on pen pals infringe his freedom of association. (Doc. 53 at 24.) The U.S. Supreme Court has interpreted freedom of association to encompass two types of associational rights: (1) intimate association, *i.e.*, the right to maintain private relationships free of state intrusion, and (2) expressive association, *e.g.*, the "right to associate for the purpose of engaging in

those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). Incarceration, by necessity, restricts the scope of a prisoner's First Amendment associational rights. *See Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Courts have considered First Amendment association rights in the context of contact visits with direct family members or a right to the companionship of one's children, and, even then, frequently condoned prison restrictions. *Overton*, 539 U.S. at 133; *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010).

Nickerson's claim sounds more like an expressive association claim. Nickerson identifies no burden on his relationship with someone whom he knows or is related, but rather, a hypothetical person with whom he might share correspondence. The Constitution does not "recognize[ ] a generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). The types of associations protected by the Constitution are things like unions, or religious practices, or protests—associations that "take positions on public questions." *Id.* at 25. Nickerson, in contrast, seeks companionship, and this right is not protected by the First Amendment. Nickerson fails to state a claim for freedom of association.

      5. Freedom of Expression

Nickerson asserts a freedom of expression violation because he would like to express his opinions about prison conditions and various prison policies. (Doc. 53 at 16.) Nickerson also would like to express who he really is, unhindered by rumors and speculation. (*Id.* at 15–16.) Nickerson does not credibly state a claim that his inability to have a pen pal restricts his ability to otherwise express his opinions.

### B. Fourteenth Amendment

To state a procedural due process claim, a plaintiff must generally allege 1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) Nickerson fails to state a Fourteenth Amendment claim. Nickerson elaborates his FAC's reference to due process in his response brief, where he states that the claim is "based on the fact, if I was to receive mail from a pen pal website, I wouldn't receive it and it would get rejected because of the pen pal policy." (Doc. 68 at 7.) Nickerson presents a hypothetical injury that proves insufficient to state a claim for a violation of due process.

## II. MOTION FOR EXTENSION

Nickerson's motion for an extension to respond to Defendants' motion to dismiss is moot.

## III. CONCLUSION

Nickerson has elaborated and expanded his claims, but in the end, his sole viable claim remains the same as in his first Complaint, whether MSP's ban on pen pals violates his First Amendment rights. Defendants will be directed to answer that claim alone.

It is therefore **HEREBY ORDERED**:

1. Defendants' motion to dismiss is **GRANTED**, in part, and **DENIED**, in part. (Doc. 63.) All claims in Nickerson's Fourth Amended Complaint except his claim regarding MSP's pen pal policy are dismissed.

2. Defendants are directed to answer Nickerson's Fourth Amended Complaint, as required by the above discussion.

3. Nickerson's motion for an extension is **DENIED** as moot. (Doc. 67.)

4. At all times, Nickerson must keep the Court and opposing counsel updated on any change of address.

DATED this 26th day of October, 2023.

Brian Morris, Chief District Judge
United States District Court